**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**



---

RAYMOND WANG

Plaintiff,

v.

SOCIETE DU FIGARO S.A.,
NAMESHIELD, ANNE MORIN

Defendants.

**15CV 9376**

CIV. NO.:

**COMPLAINT AND
JURY DEMAND**

---

Plaintiff Raymond Wang ("PLAINTIFF"), *pro se*, complains and alleges against

Defendants Societe Du Figaro S.A., Nameshield, and Anne Morin (collectively, the

"DEFENDANTS") as follows:

## INTRODUCTION

1.      PLAINTIFF brings this action to stay the transfer of the <lefigaro.news>

domain name to the DEFENDANTS, to recover damages against the DEFENDANTS for reverse

domain name hijacking, and to obtain a declaration of lawful use of the domain name

<lefigaro.news> under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C.

§ 1114 (2)(D), and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.  As set forth in

more detail below, the <lefigaro.news> domain name is not identical to, is not confusingly

similar to, and is not dilutive of any mark belonging to the DEFENDANTS.  The generic term

"le figaro" is a well known dictionary term that has been used throughout history by many

entities including, but not limited to, businesses, individuals, and local governments.  The

DEFENDANTS have no rights to that name. The PLAINTIFF lawfully registered the domain name with no knowledge of the DEFENDANTS, has legitimate interests in respect of the domain name, and has consistently acted in good faith.

2.  In proceedings under the Uniform Domain-Name Dispute Resolution Policy ("UDRP") of the Internet Corporation for Assigned Names and Numbers ("ICANN"), the DEFENDANTS knowingly provided the UDRP panel with materially false, incomplete, and misleading information in an effort hijack the <lefigaro.news> domain name from the PLAINTIFF. The DEFENDANTS knowingly and materially misrepresented that the <lefigaro.news> domain was identical to, confusingly similar to, or dilutive of a mark belonging to the DEFENDANTS. The DEFENDANTS' material misrepresentations caused the UDRP panel to order the transfer of the domain name to the DEFENDANTS. Accordingly, the PLAINTIFF asks for a declaration of lawful use of the domain name, injunctive relief prohibiting the transfer of the domain name to the DEFENDANTS, and for damages caused by DEFENDANTS' reverse hijacking.

## THE PARTIES

1.  Plaintiff Raymond Wang is an individual residing in the State of New York and has an address of 237 West 131 Street, New York, NY 20027, USA.

2.  Upon information and belief, Defendant Societe Du Figaro S.A. is a French company with an address of 14 Boulevard Haussmann, 75009 Paris, France.

3.  Upon information and belief, Defendant Nameshield is a French company with an address of 27 rue des Arenes, 49100 Angers, France, and is an authorized representative of Defendant Societe Du Figaro S.A.

4.     Upon information and belief, Defendant Anne Morin is an individual affiliated with Nameshield and shares the shame address of 27 rue des Arenes, 49100 Angers, France.

## JURISDICTION AND VENUE

5.     Subject matter jurisdiction is proper under 28 U.S.C. § 1331, § 1338, § 2201 and 15 U.S.C. § 1121 because this action involves a federal question arising under 15 U.S.C. § 1114(2)(D)(iv) and (v), and 15 U.S.C. § 1125(d).  Subject matter jurisdiction is also proper under diversity of jurisdiction as the Plaintiff and the Defendants reside in different countries and the Plaintiff residing in the United States.

6.     This court has personal jurisdiction over the DEFENDANTS because the DEFENDANTS expressly agreed to submit to the Court's personal jurisdiction.  Specifically, the DEFENDANTS filed a UDRP Complaint in which it agreed to submit to personal jurisdiction in the " jurisdiction of the domain name holder's address" with respect to any challenge to the decision of the UDRP panel.  The domain name holder is the Plaintiff Raymond Wang, with an address of 237 West 131 Street, New York, NY 10027, USA.  Because the domain name holder's address is in the State of New York, the DEFENDANTS have expressly consented to personal jurisdiction in the State of New York.

7.     Venue is proper under 28 U.S.C. § 1391(b) and § 1391(c)(2).

## BACKGROUND

8.     Plaintiff Raymond Wang registered the <lefigaro.news> domain name on his behalf on September 10, 2015, and is the current owner of the domain name.  Prior to that time, the domain name had never been owned by anyone.  It had never been owned by the DEFENDANTS.

9.    <lefigaro.news> is registered with the Registrar, Name.com.

10.    The PLAINTIFF owns and has used the <lefigaro.news> domain name in good faith since its registration on September 10, 2015. *See* Exhibit 1.

11.    The PLAINTIFF has developed the domain name <lefigaro.news> by incorporating common words and generic dictionary words. Translated into English, the dictionary term "le figaro" means "the barber," a well known profession of a person whose business is to cut hair.

12.    The PLAINTIFF has developed <lefigaro.news> to serve as a general performance arts news and opera blog and dedicated to the Italian opera *"Le nozze di Figaro"* by Wolfgang Amadeus Mozart and first premiered in 1786. Throughout history, *"Le nozze di Figaro"* is often known as the shortened *"Le Figaro"* the same way *"The Tragedy of Hamlet, Prince of Denmark,"* is known historically as *"Hamlet."*

13.    As a fan of the opera *"Le Figaro"* and a regular patron of the arts in the New York City area within proximity of the Julliard School of Music, the Lincoln Center for the Performing Arts comprising of the Metropolitan Opera, The New York City Ballet, The New York Philharmonic Orchestra and several other resident performing arts companies, the PLAINTIFF has a legitimate interest in owning and operating a blog dedicated to the arts.

14.    The PLAINTIFF does not solicit or engage in outbound domain sales. That is, the PLAINTIFF does not send outbound emails, call third parties, or initiate any other outbound communication in regards to the selling of a domain.

15.    The PLAINTIFF has no knowledge of the DEFENDANTS at the time <lefigaro.news> was registered. The PLAINTIFF neither knows French nor has any personal or business relationships with France or anyone located in France.

16.     The DEFENDANTS have never owned the <lefigaro.news> domain name.

17.     The DEFENDANTS, the PLAINTIFF, and many other individuals, and businesses have used the term "Le Figaro" in commerce historically and globally because it is a well-known mark made famous by the *"Le Figaro"* opera.  There are many businesses in New York City alone that have used it.  *See* Exhibit 2.

18.     The DEFENDANTS hold no federal trademark registration for the mark Le Figaro.  Any trademarks that the DEFENDANTS claim to hold are in violation of federal law including, but not limited to, 37 C.F.R. § 2.52(a)(1).

19.     The DEFENDANTS' website, found at www.lefigaro.fr, consistently uses the term "Le Figaro" with a colorful variation, the addition of a " · fr," or a feather sticking out of the "F" throughout.  Nowhere on the site is a ™ or a ® symbol found to indicate that the shorter and more generic "Le Figaro" is a trademark or intellectual property of the DEFENDANTS.  *See* Exhibit 3.

20.     The DEFENDANTS claim to own the mark "Le Figaro" is shared among several other business entities, such as the Group Industriel Marcel Dassault S.A. ("the Dassault Group").  However, neither entity has recorded "Le Figaro" as an assumed name with the New York Secretary of State. *See* Exhibit 4.

21.     The DEFENDANTS have no common law or federal trademark rights to "Le Figaro."

22.     The PLAINTIFF registered and uses the <lefigaro.news> domain name in good faith and its use is a bona fide use.

23.    The two words comprising <lefigaro.news> are common, generic, industrially, and artistically descriptive. As such, no likelihood of confusion exists between the PLAINTIFF and any mark belonging to a third party including, in particular, the DEFENDANTS.

24.    The term "Le Figaro" is a generic two-word term which was not coined by the DEFENDANTS; rather it is a common phrase used by numerous third parties.

25.    In particular, a separate and unrelated company uses the term "Le Figaro" as part of its company name. This company also incorporates the two generic words "Le" and "Figaro" in its business name located in New York City. *See* Exhibit 5.

26.    In addition, a separate and unrelated company uses the term "Le Figaro" as part of its company name and domain name <lefigarorestaurant.com>. This company also incorporates the two generic words "Le" and "Figaro" in its business name. *See* Exhibit 6.

27.    Another separate and unrelated company that uses the term "Le Figaro" as part of its company name and domain name is Café Le Figaro in the Netherlands at the domain <cafelefigaro.nl> . *See* Exhibit 7.

28.    Further, there is yet another separate and unrelated company that uses the term "Le Figaro" as part of its company name, incorporating the two generic words "Le" and "Figaro" in its business located in Canada. *See* Exhibit 8.

29.    Continuing this line of search uncovers a vast array of entities that use the term "Le" and "Figaro" in its name throughout Europe, such as in Germany. One of such entity is even located in the DEFENDANTS own country of France. *See* Exhibit 9.

30.    Numerous third party websites and business demonstrate that these two generic and common words are used generally and globally.

31.     On September 24, 2015, the DEFENDANTS filed Case No. 101085 with the Czech Arbitration Court (CAC) in Prague, the Czech Republic, in accordance with the UDRP seeking to force the PLAINTIFF to transfer ownership of <lefigaro.news> to the DEFENDANTS. *See* Exhibit 10.

32.     In its submissions to the CAC panel, the DEFENDANTS knowingly and materially misrepresented its alleged use and ownership of "Le Figaro" as well as the factual background between the parties.

33.     The DEFENDANTS, for example, stated that the PLAINTIFF "was necessarily aware of the Complainant's trademark when he registered the disputed name" and that the DEFENDANTS was "founded in 1826." Both of these statements are false and the DEFENDANTS provided no evidence to support either claims.

34.     The DEFENDANTS submitted as evidence its articles of incorporation in French in complete violation of the UDRP procedural requirement that the corresponding language be in English. With a Google translation of the articles of incorporation, it is clear that the Defendant Societe Du Figaro was incorporated in 1954. *See* Exhibit 11.

35.     The DEFENDANTS claim of ownership of any trademarks in the jurisdiction of France carries no weight because the constitution of modern day France was established in 1958. *See* Exhibit 12. The DEFENDANTS provided neither evidence that Defendant Societe Du Figaro was properly re-incorporated under the current constitution nor evidence that ownership of trademarks was properly transferred to the DEFENDANTS' present day legal entities.

36.     On or about November 12, 2015, the arbitration panel in the UDRP proceeding issued its ruling in favor of the DEFENDANTS. The panel's decision was based on

the DEFENDANTS' misrepresentation that the <lefigaro.news> domain name is identical or

confusingly similar to a trademark or service mark in which the DEFENDANTS have rights. On

November 16, 2015, the Plaintiff was notified by the CAC of the panel's decision.

## COUNT ONE

### Declaration under Anticybersquatting Consumer Protection Act

37.     The PLAINTIFF hereby incorporates the allegations of paragraphs 1

through 38 as if set forth here in full.

38.     The PLAINTIFF's registration and use of the <lefigaro.news> domain

name does not violate federal trademark law and is wholly permissible under both federal and

state trademark laws.

39.     In connection with the registration of the domain name <lefigaro.news>,

the PLAINTIFF had no bad faith intent to profit from the DEFENDANTS' non-existing

trademark rights in the term "Le Figaro" for any product or service of the DEFENDANTS, as

contemplated by 15 U.S.C. § 1125(d)(1)(A)(i).

40.     The DEFENDANTS have no rights in the mark "Le Figaro" and the

PLAINTIFF neither had nor has any intent to divert customers from the DEFENDANTS' online

location to a site that could harm any goodwill represented by the DEFENDANTS' non-existing

mark, either for commercial gain or with the intent to tarnish or disparage the non-existing mark,

by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of

the site.

41.     The PLAINTIFF provided no misleading contact information when

applying for the registration of the domain name, nor has it failed to maintain accurate contact

information.

42.     The PLAINTIFF neither registers nor acquires domain names which it knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks that are famous at the time of registration.

43.     The <lefigaro.news> domain name contains no mark that is either distinctive or famous within the meaning of 15 U.S.C. § 1125(c).

44.     The domain name <lefigaro.news> is not identical, confusingly similar to, or dilutive of any mark belonging to the DEFENDANTS, as contemplated by 15 U.S.C. §1125(d)(1)(A)(ii).

45.     As required by 15 U.S.C. § 1114(2)(D)(v), the PLAINTIFF has given notice to the DEFENDANTS of the PLAINTIFF's intent to file an action to establish that its registration and use of the domain name <lefigaro.news> is not unlawful under the Anticybersquatting Consumer Protection Act.

46.     A dispute exists between the PLAINTIFF and the DEFENDANTS concerning the PLAINTIFF's right to register and use the domain name <lefigaro.news>.  As a consequence thereof, an actual and justifiable controversy exists between the DEFENDANTS and the PLAINTIFF.

47.     The PLAINTIFF seeks a declaration that its registration and use of <lefigaro.news> is lawful and that the UDRP panel's decision is incorrect and contrary to law.

48.     The PLAINTIFF is and will be irreparably harmed if the <lefigaro.news> domain is transferred to the DEFENDANTS.

## COUNT TWO

### Reverse Domain Name Hijacking

49.    The PLAINTIFF hereby incorporates the allegations of paragraph 1 through 50 as if set forth here in full.

50.    The DEFENDANTS initiated the UDRP proceeding against the PLAINTIFF in a bad faith effort to deprive the PLAINTIFF of the <lefigaro.news> domain name when the DEFENDANTS had no right to the name.

51.    The DEFENDANTS knowingly provided the UDRP panel with false, incomplete, and misleading information in connection with its effort to gain control over the <lefigaro.news> domain name.

52.    The UDRP panel's decision in favor of the DEFENDANTS was based on the DEFENDANTS' knowing and material misrepresentation that the <lefigaro.news> domain name is identical or confusingly similar to a trademark or service mark in which the DEFENDANTS have rights.

53.    The DEFENDANTS conduct was knowing, intentional, and improper and caused the PLAINTIFF to suffer damages that will be established at trial.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays that this Court enter judgment in plaintiffs' favor and against the DEFENDANTS as follows:

A.    Declare that PLAINTIFF registration and use of the domain name <lefigaro.news> is not unlawful under the Anticybersquatting Consumer Protection Act.

B.    Declare that PLAINTIFF registration and use of the domain name <lefigaro.news> is lawful.

C.    Declare that PLAINTIFF is not required to transfer the registration for the domain name <lefigaro.news> to DEFENDANTS.

D.    Enter a permanent injunction enjoining the registrar from transferring the <lefigaro.news> domain name to DEFENDANTS.

E.    Enter a permanent injunction enjoining DEFENDANTS not to accept a transfer of the domain name <lefigaro.news> or claiming ownership thereof.

F.    Award PLAINTIFF its damages caused by DEFENDANTS' knowing and material misrepresentation that the <lefigaro.news> domain name is identical or confusingly similar to a trademark or service mark in which DEFENDANTS has rights.

G.    Award PLAINTIFF its reasonable costs and legal fees.

H.    Award PLAINTIFF statutory damages under 15. U.S.C. § 1117.

I.    Award PLAINTIFF such other relief as the Court deems just and proper.

## JURY DEMAIND

Plaintiff hereby requests a trial by jury on all claims in this complaint.

Dated:  November 26, 2015

Respectfully submitted,

Raymond Wang
237 West 131 Street
New York, NY 10027
USA

Plaintiff *pro se*

## EXHIBITS

**EXHIBIT 1**



**EXHIBIT 2**



**EXHIBIT 3**



# EXHIBIT 4



## NYS Department of State
### Division of Corporations
### Entity Information

The information contained in this database is current through November 25, 2015.

Selected Entity Name: LE FIGARO RESTAURANT CORP.

Selected Entity Status Information

Current Entity Name: LE FIGARO RESTAURANT CORP

DOS ID #: 3017436

Initial DOS Filing Date: FEBRUARY 24, 2004

County: NEW YORK

Jurisdiction: NEW YORK

Entity Type: DOMESTIC BUSINESS CORPORATION

Current Entity Status: ACTIVE

Selected Entity Address Information

DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)
LE FIGARO RESTAURANT CORP
'63 9TH AVENUE
NEW YORK, NEW YORK, 10019
Registered Agent
NONE

This office does not record information regarding the names and addresses of officers, shareholders or directors of nonprofessional corporations except the chief executive officer, if provided, which would be listed above. Professional corporations must include the name(s) and address(es) of the initial officers, directors, and shareholders in the initial certificate of incorporation, however this information is not recorded and only available by viewing the certificate.




**EXHIBIT 5**





**EXHIBIT 6**



**EXHIBIT 7**



**EXHIBIT 8**



**EXHIBIT 9**





**EXHIBIT 10**

On-line ADR Center of the Czech Arbitration Court (CAC)

# Amended Complaint

§ 3 UDRP Rules (Rules); §4 CAC's Supplemental Rules (Supplemental Rules)

## Case No. 101085

Language of administrative proceeding          English

## Complainant

| | |
|---|---|
| Organization | SOCIETE DU FIGARO S.A. |
| E-mail | farles@lefigaro.fr |
| Physical Address / Address of the Seat | 14, Boulevard Haussmann<br>75009 Paris<br>France |
| Telephone | +33 (0)1 57 08 68 03 |
| Fax | +33 (0)1 57 08 68 31 |

## Authorized representative

| | |
|---|---|
| Organization | Nameshield (Anne Morin) |
| E-mail | domain@nameshield.net |
| Physical Address / Address of the Seat | 27, rue des Arènes |
| Physical Address / Address of the Seat | 27, rue des Arènes<br>49100 Angers<br>France |
| Mailing Address / Address for correspondence | 27, rue des Arènes<br>49100 Angers<br>France |
| Telephone | +33.2.41.18.28.28 |
| Fax | +33.2.41.18.28.29 |

## Communication

Communication will be directed to Authorized representative.

Form of communication

Electronic form (via the On-line Platform with notifications by e-mail)

E-mail                                    domain@nameshield.net

## Respondent

Respondent type: Domain holder (Registrant)

| Last Name | Raymond Wang |
| E-mail | rwnycs@gmail.com |
| Physical Address / Address of the Seat | 237 West 131 Street<br>10027 New York/NY<br>United States |
| Telephone | +1.9178814474 |

## Registrar(s) and Disputed domain name(s)

You may file a Complaint dealing with multiple disputed domain names only if the Respondent is the same for all the disputed domain names and if the same language of administrative proceeding is applicable.

You will be required to fill in the identification of the Registrar first and then you can fill in the domain name/s.

| Organization | Name.com, Inc. |
| E-mail | notices@name.com |
| Physical Address / Address of the Seat | P.O. Box 6197 Denver CO 80206 |
| | United States |
| Telephone | 1-720-249-2374 |
| Fax | 1-303-399-3167 |
| Disputed domain name(s) | lefigaro.news |

## Panellists

Select the Panel type you prefer. Please note that there are higher fees for a three-member Panel than for a single-member Panel.

If you choose a three-member Panel, you will be asked to provide the names of three candidates who you would like to have serve as one of the Panellists. The CAC will attempt to appoint one Panellist from your list of candidates below.

| Panel type | Single Panel |

## Fees

Fees payable for filing your Complaint and for additional services (if any) are as follows (please be aware that if you ask for a single member panel, the Complaint filing fee below is only initial and you might be asked to provide additional fee under circumstances described in the Fee schedule):

| Complaint **initial** filing fee: | 500 EUR |
| Payment received by the CAC before filing the Complaint and identified as belonging to this Case Number: | 500.00 EUR |
| **Total amount payable at the moment:** | 0 EUR |

Payment information

Important: any payment of fees will be considered complete as follows:

1. Payment by bank transfer: the paid amount is deposited on the CAC's account;

Pay by bank order - Payment copy

## Mutual Jurisdiction

Mutual Jurisdiction:                                        Registrar

## Other proceedings

Insert any information you have regarding other legal proceedings, pending or decided, which relate to the disputed domain name.

No other legal
proceedings.

## Remedies sought

Indicate the remedies sought for each disputed domain name:

Transfer of the domain name to the Complainant.

## Factual and Legal Grounds

Factual Grounds

I. Protected rights relied on by the Complainant
   a. Registered trade/service mark
      i. Registered in several countries
   b. Well-known/famous mark
   c. Trade name/business identifier
   d. Company name
II. Complainant's Rights
   a. Owner
   b. Are Complainant's rights valid in the territory where domain name holder is established?
      i. Yes

ADDITIONAL EXPLANATIONS:

The Complainant, the SOCIETE DU FIGARO (please see their website at: www.lefigaro.com) is a newspaper of French press founded in 1826 (Annex 1).

The Complainant is the owner of several trademarks consisting in the distinctive wording LE FIGARO® (Annex 2).

The trademark LE FIGARO® has also been registered in the TradeMark ClearingHouse (TMCH) on December 4th, 2013 (Annex 3).

The Complainant also owns many domain names consisting in this same wording LE FIGARO® (Annex 4).

The disputed domain name <lefigaro.news> has been registered on September 10th, 2015 (Annex 5).

The Complainant states that the disputed domain name <lefigaro.news> is identical to its trademarks,

domain names and branded goods LE FIGARO®.

<u>Legal Grounds</u>

I. Domain name is
   a. identical
II. The Respondent does not have any rights or legitimate interest in the domain name(s)
    Categories of issues involved:
    a. Domain parking
    b. Inactive website
    c. Non use/Passive holding

ADDITIONAL EXPLANATIONS:

The Complainant is required to make out a prima facie case that the Respondent lacks rights or legitimate interests. Once such prima facie case is made, the Respondent carries the burden of demonstrating rights or legitimate interests in the domain name.

The Complainant contends that the Respondent is not affiliated with him nor authorized by him in any way to use the trademark LE FIGARO®. The Complainant does not carry out any activity for, nor has any business with the Respondent.

The Complainant asserts that the Respondent has no rights or legitimate interests in respect of the domain name <lefigaro.news> and that he is not related in any way to the Complainant's business.

Furthermore, the website linked with the disputed domain name <lefigaro.news> is in registrar parking page since its registration (Annex 7).

Indeed, the extension ".NEWS" increases the likelihood of confusion existing between the Complainant's trademark LE FIGARO® and the disputed domain name <lefigaro.news> because the trademark LEFIGARO® designates classes in relation to newspapers.

Thus, the Respondent could not have used the disputed domain name without infringing the Complainant's intellectual property rights on the expression LE FIGARO®.

Thus, the Respondent has no right or legitimate interests in respect of the disputed domain name <lefigaro.news>.

III. The domain name(s) has been registered and is being used in bad faith
     Categories of issues involved:
     a. Cumulative requirement
     b. Meaning of registration
        i. Acquisition
        ii. Maintenance
     c. Registration of a well-known/famous trade mark
     d. Blocking registration
     e. Inactive website
     f. Non-use of the domain name
     g. Domain parking

ADDITIONAL EXPLANATIONS:

The Complainant's international trademark LE FIGARO® is well-known in the whole world. Indeed, Google search on the expression LE FIGARO® provide several results, all of them being linked with the Complainant (Annex 6).

The expression LE FIGARO® is a distinctive trademark, as stated in the following decisions:
WIPO - DTV2008-0008 - SOCIETE DU FIGARO v. THE YAK CORP - <lefigaro.tv>
WIPO - D2015-0094 - SOCIETE DU FIGARO v. Michael Ehrhardt / Mike Hard <lefigaro.paris> and <le-figaro.paris>

The disputed domain name <lefigaro.news> is identical with the Complainant's international trademark LE FIGARO® and to the Complainant's domain names including this wording.

The trademark LE FIGARO® is also registered in the TradeMark ClearingHouse (TMCH) since December 4th, 2013 (Annex 3).

Thus, given the distinctiveness and reputation of the Complainant's trademark LE FIGARO®, together with the TMCH registration, we can state that the Respondent has registered the disputed domain name <lefigaro.news> with full knowledge of the Complainant's intellectual property rights on the expression LE FIGARO®.

Please see for instance:
WIPO - D2004-0673 - Ferrari S.p.A v. American Entertainment Group Inc

Moreover, the Respondent has not demonstrated any activity in respect of the disputed domain name <lefigaro.news>. Indeed, the domain name is in registrar parking page since its registration (Annex 7).

As prior UDRP jurisprudence has held, the incorporation of a famous trademark into a domain name, coupled with an inactive website, may be evidence of bad faith registration and use.

Indeed, the passive holding, under the appropriate circumstances, falls within the concept of the domain name being used in bad faith, particularly where the domain name in question contains a well-known trademark.

Please see for instance:
WIPO - D2000-0003 - Telstra Corporation Limited v. Nuclear Marshmallows;
WIPO - D2008-0028 - Action S.A. v. Robert Gozdowski;
WIPO - D2000-0400 - CBS Broadcasting Inc. v. Dennis Toeppen.

On these bases, the Complainant concludes that the Respondent has registered and is using the disputed domain name <lefigaro.news> in bad faith.

IV. Legal basis

**Please explain your arguments in detail below.**
WIPO - D2014-1590 - Fiskars Corporation v. Whois Privacy Service / James Taverner <fiskars.tools>
WIPO - DTV2008-0008 - SOCIETE DU FIGARO v. THE YAK CORP - <lefigaro.tv>
WIPO - D2015-0094 - SOCIETE DU FIGARO v. Michael Ehrhardt / Mike Hard <lefigaro.paris> and <le-figaro.paris>

WIPO - D2004-0673 - Ferrari S.p.A v. American Entertainment Group Inc

WIPO - D2000-0003 - Telstra Corporation Limited v. Nuclear Marshmallows;

WIPO - D2008-0028 – Action S.A. v. Robert Gozdowski;

WIPO - D2000-0400 – CBS Broadcasting Inc. v. Dennis Toeppen.

**Annexes attached to the Complaint**

Annex 1: Information regarding the Complainant

Annex 2: Complainant's trademark LE FIGARO®

Annex 3: Complainant's TradeMark ClearingHouse

Annex 4: Complainant's domain names

Annex 5: Whois of the disputed domain name

Annex 6: Google search on &quot;LE FIGARO&quot;

Annex 7: Website linked with the disputed domain name

**Complaint Signature Page**

**Case No. : 101085**

**Covenants**

Complainant submits itself to the applicable Mutual Jurisdiction as specified above. The Complainant is aware that if it has chosen the Mutual Jurisdiction of the principal office of the Registrar although the domain name holder has not submitted to that jurisdiction in its Registration Agreement, the Mutual Jurisdiction of the domain name holder's address applies instead.

**Statements**

COMPLAINANT AGREES THAT ITS CLAIMS AND REMEDIES CONCERNING THE REGISTRATION OF THE DOMAIN NAME, THE DISPUTE, OR THE DISPUTE'S RESOLUTION SHALL BE SOLELY AGAINST THE DOMAIN-NAME HOLDER AND WAIVES ALL SUCH CLAIMS AND REMEDIES AGAINST (A) THE DISPUTE-RESOLUTION PROVIDER AND PANELLISTS, EXCEPT IN THE CASE OF DELIBERATE WRONGDOING, (B) THE REGISTRAR, (C) THE REGISTRY ADMINISTRATOR, AND (D) THE INTERNET CORPORATION FOR ASSIGNED NAMES AND NUMBERS (ICANN), AS WELL AS THEIR DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS.

Complainant certifies that the information contained in this Complaint is to the best of Complainant's knowledge complete and accurate, that this Complaint is not being presented for any improper purpose, such as to harass, and that the assertions in this Complaint are warranted under these Rules and under applicable law, as it now exists or as it may be extended by a good-faith and reasonable argument.

List of Annexes: Annex 1: Information regarding the Complainant, Annex 2: Complainant's trademark LE FIGARO®, Annex 3: Complainant's TradeMark ClearingHouse, Annex 4: Complainant's domain names, Annex 5: Whois of the disputed domain name, Annex 6: Google search on "LE FIGARO", Annex 7: Website linked with the disputed domain name

On behalf of Nameshield (Anne Morin) :

Anne Morin

_____

Signature

By:

Date:

**EXHIBIT 11**



Greffe du Tribunal de Commerce de Paris
1 quai de la Corse
75198 Paris CEDEX 04

Nº de gestion 1954B0777S

***Extrait Kbis***

**EXTRAIT D'IMMATRICULATION PRINCIPALE AU REGISTRE DU COMMERCE ET DES SOCIETES**

***à jour au 6 mai 2015***

## IDENTIFICATION DE LA PERSONNE MORALE

| | |
|---|---|
| *Immatriculation au RCS, numéro* | 542 077 755 R.C.S. Paris |
| *Date d'immatriculation* | 26/10/1954 |
| *Dénomination ou raison sociale* | **SOCIETE DU FIGARO** |
| *Forme juridique* | Société par actions simplifiée |
| *Capital social* | 16 860 475,00 EUROS |
| *Adresse du siège* | 14 boulevard Haussmann 75009 Paris |
| *Activités principales* | La publication du journal Le Figaro et de tous autres journaux et publications, les prestations éditoriales ou administratives à l'ensemble des sociétés du Groupe Figaro. |
| *Durée de la personne morale* | Jusqu'au 31/12/2068 |
| *Date de clôture de l'exercice social* | 31 décembre |

## GESTION, DIRECTION, ADMINISTRATION, CONTROLE, ASSOCIES OU MEMBRES

***Président***

| | |
|---|---|
| *Nom, prénoms* | DASSAULT Serge |
| *Date et lieu de naissance* | Le 04/04/1925 à Paris 4ème (75) |
| *Nationalité* | Française |
| *Domicile personnel* | 9 rond point des Champs Elysees 75008 Paris |

***Président du conseil de surveillance***

| | |
|---|---|
| *Nom, prénoms* | JOHNSTON-ROUSSILLON Rudi |
| *Date et lieu de naissance* | Le 30/11/1952 à Paris 14ème (75) |
| *Nationalité* | Française |
| *Domicile personnel* | 9 rond point des Champs Elysees 75008 Paris |

***Vice-Président - Membre du conseil de surveillance***

| | |
|---|---|
| *Nom, prénoms* | WAUTELET Bénédicte |
| *Date et lieu de naissance* | Le 14/09/1966 à BREDA (PAYS-BAS) |
| *Nationalité* | Belge |
| *Domicile personnel* | 14 boulevard Haussmann 75009 Paris |

***Membre du conseil de surveillance***

| | |
|---|---|
| *Nom, prénoms* | BENGANA Sofia |
| *Date et lieu de naissance* | Le 13/08/1965 à ALGER (ALGERIE) |
| *Nationalité* | Française |
| *Domicile personnel* | 14 boulevard Haussmann 75009 Paris |

***Membre du conseil de surveillance***

| | |
|---|---|
| *Nom, prénoms* | COURT Marielle |
| *Date et lieu de naissance* | Le 26/09/1957 à Lyon 6ème (69) |
| *Nationalité* | Française |
| *Domicile personnel* | 14 boulevard Haussmann 75009 Paris |

***Membre du conseil de surveillance***

| | |
|---|---|
| *Nom, prénoms* | Brezet Alexis |
| *Date et lieu de naissance* | Le 24/08/1962 à Toulouse (31) |
| *Nationalité* | Française |
| *Domicile personnel* | 14 boulevard Haussmann 75009 Paris |

***Membre du conseil de surveillance***

| | |
|---|---|
| *Nom, prénoms* | Breysse Jean-Luc |
| *Date et lieu de naissance* | Le 15/09/1963 à Tunis (TUNISIE) |
| *Nationalité* | Française |
| *Domicile personnel* | 14 boulevard Haussmann 75009 Paris |

**SOCIETE DU FIGARO**
RCS 542 077 755 (1954B07775)



---

### Membre du conseil de surveillance
| | |
|---|---|
| *Nom, prénoms* | Roquette Guillaume |
| *Date et lieu de naissance* | Le 24/05/1965 à Lille (59) |
| *Nationalité* | Française |
| *Domicile personnel* | 14 boulevard Haussmann 75009 Paris |

### Membre du conseil de surveillance
| | |
|---|---|
| *Nom, prénoms* | Gonzalez de Linares Soizick |
| *Nom d'usage* | Dobler |
| *Date et lieu de naissance* | Le 29/11/1968 à Compiègne (60) |
| *Nationalité* | Française |
| *Domicile personnel* | 14 boulevard Haussmann 75009 Paris |

### Membre du conseil de surveillance
| | |
|---|---|
| *Nom, prénoms* | Subrini Aurore |
| *Nom d'usage* | Domont |
| *Date et lieu de naissance* | Le 20/12/1968 à Clichy la Garenne |
| *Nationalité* | Française |
| *Domicile personnel* | 14 boulevard Haussmann 75009 Paris |

### Membre du conseil de surveillance
| | |
|---|---|
| *Nom, prénoms* | Barluet Alain |
| *Date et lieu de naissance* | Le 18/05/1960 à Paris 16ème (75) |
| *Nationalité* | Française |
| *Domicile personnel* | 14 boulevard Haussmann 75009 Paris |

### Membre du conseil de surveillance
| | |
|---|---|
| *Nom, prénoms* | Nodé-Langlois Fabrice |
| *Date et lieu de naissance* | Le 31/10/1968 à Clichy la Garenne |
| *Nationalité* | Française |
| *Domicile personnel* | 14 boulevard Haussmann 75009 Paris |

### Membre du conseil de surveillance
| | |
|---|---|
| *Nom, prénoms* | Jacquot Bruno |
| *Date et lieu de naissance* | Le 26/08/1958 à Quillan (11) |
| *Nationalité* | Française |
| *Domicile personnel* | 14 boulevard Haussmann 75009 Paris |

### Directeur général
| | |
|---|---|
| *Nom, prénoms* | FEUILLEE Marc |
| *Date et lieu de naissance* | Le 01/09/1962 à Paris 15ème (75) |
| *Nationalité* | Française |
| *Domicile personnel* | 14 boulevard Haussmann 75009 Paris |

### Commissaire aux comptes titulaire
| | |
|---|---|
| *Dénomination* | APLITEC |
| *Forme juridique* | Société par actions simplifiée |
| *Adresse* | 4-14 rue Ferrus 75014 Paris |
| *Immatriculation au RCS, numéro* | 702 034 802 Paris |

### Commissaire aux comptes titulaire
| | |
|---|---|
| *Dénomination* | MAZARS |
| *Forme juridique* | Société anonyme |
| *Adresse* | Tour Exaltis 61 rue Henri Regnault 92400 Courbevoie |
| *Immatriculation au RCS, numéro* | 784 824 153 Nanterre |

### Commissaire aux comptes suppléant
| | |
|---|---|
| *Nom, prénoms* | LAOT PIERRE |
| *Date et lieu de naissance* | Le 17/06/1954 à GUIPAVAS |
| *Nationalité* | Française |
| *Domicile personnel ou adresse professionnelle* | 44 quai de Jemmapes 75010 Paris |

### Commissaire aux comptes suppléant

**SOCIETE DU FIGARO**
RCS 542 077 755 (1954B07775)

| | |
|---|---|
| *Nom, prénoms* | PETRONI Raymond |
| *Date et lieu de naissance* | Le 02/04/1957 à BASTIA (2B) |
| *Nationalité* | Française |
| *Domicile personnel ou adresse professionnelle* | 29 rue Montbrouard 95170 Deuil la Barre |

## SOCIETE RESULTANT D'UNE FUSION OU D'UNE SCISSION

- *Mention n° 139 du 08/02/2011* — SOCIETE AYANT PARTICIPE A L'OPERATION DE FUSION : DENOMINATION AGENCE DE PRESSE INTERACTIVE - A P I FORME JURIDIQUE Société à responsabilité limitée à associé unique SIEGE SOCIAL 14 Bld Haussmann 75009 Paris RCS 423 096 593

- *Mention n° 140 du 08/02/2011* — SOCIETE AYANT PARTICIPE A L'OPERATION DE FUSION : DENOMINATION AGPI - AGENCE DE PRESSE ET INFORMATION FORME JURIDIQUE Société à responsabilité limitée SIEGE SOCIAL 14 Bld Haussmann 75009 Paris RCS 303 334 221

- *Mention n° 181 du 02/01/2013* — SOCIETE AYANT PARTICIPE A L'OPERATION DE FUSION : DENOMINATION SPORT 24 FORME JURIDIQUE SA SIEGE SOCIAL 14 boulevard Haussmann 75009 Paris RCS 419583182

- *Mention n° 199 du 13/01/2014* — SOCIETE AYANT PARTICIPE A L'OPERATION DE FUSION : DENOMINATION EVENE FORME JURIDIQUE SAS SIEGE SOCIAL 14 Boulevard Haussmann 75009 Paris RCS 424 414 019

## RENSEIGNEMENTS RELATIFS A L'ACTIVITE ET A L'ETABLISSEMENT PRINCIPAL

| | |
|---|---|
| *Adresse de l'établissement* | 14 boulevard Haussmann 75009 Paris |
| *Enseigne* | LE FIGARO, LE FIGARO MAGAZINE, MADAME FIGARO, FIGAROSCOPE, LE FIGAROSCOPE, |
| *Activité(s) exercée(s)* | La publication du journal Le Figaro et de tous autres journaux et publications, les prestations éditoriales ou administratives à l'ensemble des sociétés du Groupe Figaro. |
| *Date de commencement d'activité* | 05/07/1856 |
| *Origine du fonds ou de l'activité* | Création |
| *Mode d'exploitation* | Exploitation directe |

Mise en location gérance à PEN DUICK SAS à compter du 01/01/2012 de la branche d'activité d'organisateur de la course à la voile, LA SOLITAIRE DU FIGARO et d'éditeur d'un guide de la course, LE GUIDE DE LA SOLITAIRE et d'un site internet www.lasolitaire.com

## IMMATRICULATIONS HORS RESSORT
R.C.S. Lyon

## OBSERVATIONS ET RENSEIGNEMENTS COMPLEMENTAIRES

- *Mention n° 1* — SOCIETE REGIE PAR LA LOI DU 24 JUILLET 1966 ET LE DECRET DU 23 MARS 1967 SUR LES SOCIETES COMMERCIALES.ASSEMBLEE DU 28 11 1968

- *Mention n° 173 du 24/11/2011* — A compter du 14/10/2011, achat de divers éléments d'actifs incorporels et corporels (à l'exclusion du droit au bail) dépendant du fonds de commerce relatif au site internet "ISAVEURS.COM" dédié à l'univers de la cuisine (notamment recettes culinaires, tourisme culinaire, conseil nutritionnel), à la société ISAVEURS SARL 7 rue Cadet 75009 Paris 432969574 RCS PARIS journal d'annonces légales : Petites Affiches du 21/10/2011

**SOCIETE DU FIGARO**
RCS 542 077 755 (1954B07775)

Le Greffier

RCS Paris - 07/05/2015 - 09:24:27

FIN DE L'EXTRAIT

["