USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/26/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

RAYMOND WANG,

                       Plaintiff,

               -v-

SOCIETE DU FIGARO S.A., NAMESHIELD, and
ANNE MORIN,

                       Defendants.

------------------------------------------------------------------ X

15 Civ. 9376 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Raymond Wang, proceeding *pro se,* brings this action seeking injunctive,
monetary, and declaratory relief for claims arising from alleged cybersquatting and reverse
domain-name hijacking in violation of the Anticybersquatting Consumer Protection Act
("ACPA"), Pub. L. No. 106-113, 113 Stat. 1536 (1999) (codified in scattered sections of Title 15
of the United States Code). On December 29, 2016, this Court entered default judgment as to
liability against the three defendants: Société du Figaro, Nameshield, and Anne Morin (together,
"Figaro"). The Court then referred the case to Magistrate Judge James L. Cott for an inquest into
damages, if any, and a report and recommendation as to whether Wang is due any other relief.
Wang and defendants (who appeared after default judgment had been entered) made submissions
on these issues.

On January 26, 2018, Judge Cott issued a detailed, thoughtful, and persuasive Report and
Recommendation (the "Report"). He recommended that Wang not be awarded injunctive relief
or monetary damages, but that, subject to a possible issue of mootness, he be awarded limited
declaratory relief. On February 9, 2018, Wang submitted his objections to the Report. Dkt. 42

("Objections").[1]  On February 22, 2018, Figaro filed a response to Wang's Objections.  Dkt 43 ("Def. Response").  On March 14, 2018, Wang filed a reply to defendant's response.  Dkt 44 ("Pl. Reply").

For the reasons that follow, the Court adopts the Report in substantial part and dismisses Wang's remaining claims as moot.

## I.    Background[2]

On September 10, 2015, Wang registered the domain name <lefigaro.news> with the domain name registrar Name.com.  Report at 1, 5; *see* Dkt. 2 ("Compl.") ¶¶ 8–9.  Wang alleges that he registered that domain referencing the 1786 Mozart opera *Le Nozze di Figaro*, for purposes of creating "a general performance arts news and opera blog."  Compl. ¶¶ 8–13.  He alleges that he was unaware that the words "le figaro" also form the name of the French newspaper, *Le Figaro*.  *Id.* ¶¶ 13, 15

Defendant Société du Figaro S.A. is a French corporation headquartered in Paris. Report at 2.  Société du Figaro owns and publishes *Le Figaro*, which defendants hold out as France's "premier daily general-interest newspaper."  *Id.*  Société du Figaro owns several trademarks that include the words "Le Figaro" and more than 200 domain names that include variations on the terms "Le Figaro" or "Figaro."  *Id.*

On September 29, 2015, Nameshield, on behalf of Société du Figaro, commenced an arbitral proceeding under the Uniform Domain-Name Dispute-Resolution Policy ("UDRP")

---

[1] Wang's Objections are not paginated and are interrupted by a document denominated "Affidavit for Response and Objection."  The Court's references to page numbers in the Objections are to the pages of the PDF file located at Dkt. 42.

[2] The following factual summary is drawn from the Report and the materials in the record.

against Wang. Report at 6. In its UDRP complaint, Société du Figaro argued that the domain name <lefigaro.news> was identical to its "LE FIGARO" trademark. *Id.* On November 9, 2015, the UDRP panel issued a decision finding that Wang had "no right or legitimate interests in the Domain Name and the Domain Name had been registered and used in bad faith" and directed that the domain name <lefigaro.news> be transferred to Société du Figaro. *Id.* at 8. The parties dispute whether the UDRP panel's order was effectuated such that <lefigaro.news> was actually transferred from Wang to Société du Figaro. *Id.* at 9; *see* Objections at 8.

On November 30, 2015, Wang commenced this action by filing a complaint alleging that defendants violated the cybersquatting and reverse domain-name hijacking provisions of the Anticybersquatting Consumer Protection Act. *See* Compl. In his complaint, Wang sought a declaration that his use of the domain name was lawful, injunctive relief prohibiting the transfer of the domain name to the defendants, and damages caused by defendants' reverse hijacking. Compl. ¶ 2.

On December 29, 2016, after defendants were served but failed to appear, this Court entered a default judgment in Wang's favor as to liability. Dkt. 18. The Court based its entry of default judgment on its independent review of Wang's Complaint, which, the Court concluded, had adequately pled facts supporting the exercise of subject-matter and personal jurisdiction. *Id.* at 4. The Court then referred the matter to Judge Cott for an inquest as to damages and/or other potential remedies. Dkt. 19.

As Judge Cott recognized, however, a significant development had occurred during the pendency of his review: On July 10, 2017, a third party named Thomas Lextrait registered the "lefigaro.news" domain name. Report at 10; *see* Dkt. 39. As Judge Cott noted in his January 2018 Report, that fact presented a substantial question of mootness as to the one area of relief, a

declaration, to which Judge Cott found Wang otherwise entitled. Alerted by Judge Cott to that concern, the Court now finds that this development—the registration of the domain name by a third party—precludes granting declaratory relief.

## II.    Discussion

After a magistrate judge has issued a Report and Recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). To accept the portions of a report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *Acevedo v. Lempke*, No. 10 Civ. 5285 (PAE) (HBP), 2014 WL 4651904, at *3 (S.D.N.Y. Sept. 17, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)). When a timely and specific objection has been made, the court is obligated to review the contested issues *de novo*. Fed. R. Civ. P. 72(b)(3); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998). But when the objections simply reiterate previous arguments or make only conclusory statements, the court reviews the report and recommendation for clear error. *Dickerson v. Conway*, No. 08 Civ. 8024 (PAE) (FM), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); see *Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009) (collecting cases). This is so even in the case of a *pro se* petitioner. *Cf. Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009).

Judge Cott's thorough Report recommends that the Court deny Wang the majority of the relief he seeks. The Report recommends, however, that the Court issue a declaratory judgment with respect to one of Wang's two reverse-domain name hijacking claims. Specifically, the Report recommends concluding that Wang established a claim under the ACPA only for reverse domain-name hijacking, pursuant to 15 U.S.C. § 1114(2)(D)(v). Under that provision, which

provides for equitable and declaratory relief but not damages, the Report recommends granting Wang a subset of the declaratory relief he seeks: to wit, a limited declaration that Wang's use of the <lefigaro.com> domain name was not unlawful under the ACPA. Report at 37–38. The Report recommends against, however, the broader declaration that Wang's use of the domain name is *generally* lawful. *Id.*

The Report also recommends against the issuance of an injunction. As the Report explains, one of the injunctions Wang seeks—barring the domain name registrar Name.com from transferring lefigaro.news to Figaro—would entail enjoining a nonparty. *Id.* at 39–40. And Wang has pled nothing to suggest that Name.com is in privity with any defendant. *Id.* The Report notes that the other injunction Wang seeks—enjoining defendants from *receiving* a transfer of the lefigaro.news domain—"may well be moot" because the domain name is in the control of a third party. *Id.* at 40–41. Moreover, the Report reasons, an injunction barring defendants from ever receiving the domain name would be overbroad because it would prohibit their use of the domain name even in the event Wang were to "abandon[] it in the future." *Id.* at 41.

Finally, the Report recommends against the award of damages, attorneys' fees, and costs. The Report determined that Wang had established defendants' violation only of Section 1114(2)(D)(v) of the ACPA. *Id.* at 42; *see id.* at 17–32 (discussing Wang's claim under this section); *id.* at 32–35 (discussing Wang's claim for reverse domain name hijacking under § 1114(2)(D)(iv)); *id.* at 13–16 (discussing Wang's claim for cybersquatting under § 1125(d)(1)). Subsection 1114(2)(D)(v), the Report explains, does not provide for damages. *Id.* at 42. And because Wang is proceeding *pro se*, he has not incurred attorney's fees or offered any evidence of costs.

Defendants have not objected to any aspect of the Report. Wang raises two specific objections to the Report. The Court reviews these contested issues *de novo*. Fed. R. Civ. P. 72(b)(3); *Hynes*, 143 F.3d at 656.

First, Wang objects to the Report's conclusion that defendants' use of the term "Le Figaro" is eligible for trademark protection. Wang argues that the Report wrongly characterizes defendant's use of the mark as arising in the media industry when it should be characterized as arising in the utility industry (because, Wang argues, the internet is properly understood as a utility). *See* Report at 23; Objection at 7–8. Wang misunderstands the Report's analysis. As the Report recognizes, it is irrelevant what specific industry Wang's or Figaro's businesses are categorized within, so long as *Le Figaro* is not in the haircutting industry (because "Le Figaro" is French for "barber"). As the Report aptly explains, the haircutting industry is the only industry in which Figaro's use of the mark "Le Figaro" would be a generic use ineligible for trademark protection. Because the defendants are definitively not in the haircutting business, their use of the mark is not generic and therefore is eligible for trademark protection. Wang's objection on this score is separately non-meritorious because it is irrelevant: The Report did not rely on this piece of its analysis, and, in any event, made the observation in the course of, and in support of, its conclusion that Wang should *prevail* on his claim under 15 U.S.C. § 1114(2)(D)(v). Wang does not, of course, object to that ultimate finding in his favor. *See* Objection at 1.

Second, Wang objects to the Report's recommendation against permanently enjoining defendants from ever accepting a transfer of <lefigaro.news> or claiming ownership over it. *See* Objection at 8. The Report reasoned that such an injunction would be overbroad and potentially would "impose unnecessary burdens on lawful activity." *See* Report at 41 (internal quotation marks omitted). Further, the Report noted, Wang's bid for this relief "may well be moot"

6

because "an individual not affiliated with any of the parties has recently registered the domain name at issue." *Id.* at 40.

Wang argues that injunctive relief *should* be granted because the Court may infer an affiliation between defendants and the third party who currently owns the domain name, Thomas Lextrait. This purported connection, Wang argues, makes it more likely to project that Lextrait will someday transfer the domain name to defendants. In support, Wang comes forward with extra-record materials drawn from the Internet that are neither tethered to nor supported by any allegations in Wang's complaint. These Internet materials suggest that (1) Thomas Lextrait is of French origin and (2) has the same surname as an employee listed on defendant's corporate website. *See* Objections at 8. These unverified materials fall far short of supplying a sound evidentiary basis on which to infer an affiliation between Lextrait and the defendants, let alone to support the speculative forecast that Wang urges of a future transfer of the domain name from Lextrait to one or more of the defendants. The Court therefore rejects as ill-founded Wang's second objection.

As to the remainder of the Report, the Court's review is for clear error. The Court has identified no such error in the Report.

The Court, however, has an independent obligation to ensure its jurisdiction. Upon the Court's *de novo* review of the mootness issue spotted by Judge Cott, the Court concludes that the transfer of the domain name at issue to a third party since the Court's entry of a default judgment requires a fresh assessment of this Court's earlier finding of subject matter jurisdiction. *See* Dkt. 18. The Court now concludes that the parties' dispute as to the lawfulness of Wang's use of <lefigaro.news> no longer presents a live, justiciable controversy, such that the Court lacks jurisdiction to issue a declaratory judgment as to that subject.

Because Article III of the United States Constitution limits the subject matter jurisdiction of the federal courts to cases or controversies, federal courts may exercise their equitable powers only where such a controversy exists. *See generally MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–37 (2007). A Court's exercise of the authority provided by the Declaratory Judgment Act is no exception: A court "may declare the rights and other legal relations of any interested party seeking such declaration," but only "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a); *see MedImmune*, 549 U.S. at 127; *see, e.g., AARP v. 200 Kelsey Assocs. LLC,* No. 06 CIV. 81 (GEL), 2009 WL 47499, at *3 (S.D.N.Y. Jan. 8, 2009).[3] A court may not render a declaratory judgment when the underlying question is moot. *See Pancake v. McCarthy*, 806 F. Supp. 378, 379 (E.D.N.Y. 1992) (citing *Golden v. Zwickler*, 394 U.S. 103 (1969)); *see also Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 403 (S.D.N.Y. 2012) ("As with any federal action, courts may not entertain actions for declaratory judgment 'when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action.'" (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968))).

As the Second Circuit has explained, "*MedImmune* requires that [this Court] consider only whether the adversity of legal interests that exists between the parties is real and substantial and admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Nike, Inc. v.*

---

[3] As the Report aptly notes, Wang's claim for declaratory relief is properly understood as arising directly under the ACPA, rather than under the Declaratory Judgment Act. *See* Report at 36 n.17. A Court's power to issue relief under the ACPA, however, is no greater than under the Declaratory Judgment Act. *See Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 25 (1st Cir. 2001) ("[W]e do not read § 1114(2)(D)(v) as granting federal jurisdiction over mere abstract claims of federal right where no Article III case exists.").

*Already, LLC*, 663 F.3d 89, 95–96 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013) (internal quotation marks omitted).

The parties' dispute as to the lawfulness of Wang's use of <lefigaro.news> under the ACPA is no longer "real and substantial." Rather, it has been rendered moot by one critical development—the registration of the domain name by a third party. As of July 10, 2017, Thomas Lextrait—a third party with whom neither plaintiff nor defendant has any affiliation—uses and has legal right to the domain name. Report at 10; *see* Dkt. 39. Because of Lextrait's present ownership and use of the domain name, neither Wang nor defendants—absent relinquishment by Lextrait—may regain control of the domain name. And nothing in the record indicates that such a development is forthcoming. There is no evidence that either party will regain control of the domain at any point in the foreseeable future, as no evidence suggests an intention or plan by Lextrait to relinquish ownership of the domain. And, of course, even if Lextrait did relinquish ownership of the domain, there is no evidence that he would transfer that ownership to Figaro, or, were Lextrait to abandon ownership, that Figaro would take any further efforts to register the domain name.

The Report acknowledges the contingent, hypothetical nature of the parties' dispute. The Report noted its expectation that a "declaration that Wang has not violated the ACPA's anticybersquatting provision" would be "sufficient to dissuade defendants from attempting to reacquire <lefigaro.news> from Wang" *if* Wang "ever seeks again to register it" and *if* "Wang [were] to use the domain name again . . . in good faith without attempting to profit at defendants' expense." *See* Report at 41. Thus, as the Report describes, several contingencies would need to materialize for the declaratory relief at issue to actually bear on the parties' conduct: Lextrait would need to abandon the domain, Wang would need to re-register the domain, Figaro would

need to attempt to reacquire the domain, and Wang's renewed use of the domain would have to be in good faith and without any attempt to profit at defendants' expense. Those contingencies make unavoidable that a declaratory judgment by the Court as to Wang's earlier lawful use of the domain name would have no bearing on any present controversy. Rather, to the extent that the Court issued a declaration to the effect that Wang's use of the domain name would be lawful under the ACPA under certain hypothesized facts, it would be an "opinion advising what the law would be upon a hypothetical state of facts." *Nike*, 663 F.3d at 95–96.

That the declaratory judgment Wang seeks would describe as lawful Wang's *past* use of the domain name does not change the mootness analysis. "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks omitted). Whether Wang's prior use of <lefigaro.news> was lawful under the ACPA is no longer embedded in any actual controversy.

This case is thus far afield from those in which courts have issued declaratory judgments under the ACPA. For example, in *Sallen,* a Brazilian corporation, CL, owned trademark rights to the term "Corinthians." *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14 (1st Cir. 2001). Sallen, a U.S. citizen, registered the domain name <corinthians.com> and CL initiated a UDPR dispute resolution proceeding against him. *Id.* at 20. Like Wang, Sallen unsuccessfully defended his registration and use of the domain before the UDRP panel, and the panel ordered the domain name transferred to CL. *See id.* at 21–22. The transfer was completed and CL took possession of and began using the domain. *See id.* at 25. Sallen maintained that the domain name belonged to him and brought suit in federal court under the ACPA, seeking a declaratory

judgment that his use of the domain name was not unlawful under the ACPA. *Id.* at 22. A live controversy existed between the parties, the First Circuit reasoned, because the declaratory judgment sought had the potential to result in the return of the domain name in CL's possession to Sallen, thereby redressing his UDPR defeat. *Id.* at 25–26.

Here, however, a declaratory judgment would not redress Wang's UDRP defeat. Neither party to the case has the ability to take possession of the domain at this time. A declaration that Wang's use of <lefigaro.news> did not violate the ACPA would not alter the legal status of either party.

Accordingly, because the Court lacks jurisdiction to issue a declaratory judgment (or an injunction) in the absence of a live controversy between the parties, the Court must dismiss Wang's claims under Subsection 15 U.S.C. § 1114(2)(D)(v), which provides for declaratory and injunctive relief only. Accordingly, the Court must also vacate its prior entry of default judgment as to liability on those claims.

## CONCLUSION

For the foregoing reasons, the Court adopts Judge Cott's Report and Recommendation in substantial part and thereby denies Wang's claims for damages under 15 U.S.C. §§ 1114(2)(D)(iv) and 1125(d)(1). As to the Report's recommendation that the Court deny injunctive relief and issue a limited declaratory judgment, while the Court agrees with the Report's reasoning and finds no error, plain or otherwise, the Court nevertheless has determined independently that it now lacks jurisdiction to award (or deny) such relief. Thus, as to Wang's claim for reverse domain name hijacking under 15 U.S.C. § 1114(2)(D)(v), the Court dismisses—without prejudice—for lack of subject matter jurisdiction. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: June 26, 2018
New York, New York